FILED
CLERK

10:04 am, Sep 26, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

UNITED STATES OF AMERICA,

        -against-

SHAROD WILLIAMS,

                Defendant.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
10-cr-622 (ADS)

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
610 Federal Plaza
Central Islip, NY 11722
      By:    Lara Treinis Gatz, Assistant U.S. Attorney

**Gary Schoer, Esq.**
*Counsel for the Defendant*
6800 Jericho Turnpike, Suite 108W
Syosset, NY 11791

**SPATT, District Judge**:

On December 8, 2011, after a three-week jury trial, the Defendant Sharod Williams (the "Defendant" or "Williams") was convicted of 15 criminal counts, the same counts for which he had been indicted by a grand jury on August 12, 2010. This conviction stems from a series of robberies, which resulted in a conviction of one count of Robbery Conspiracy, two counts of Post Office and Bank Robbery Conspiracy, seven counts of Substantive Robberies, and five counts of Brandishing a Firearm in Furtherance of the Substantive Robberies. Williams was arrested on June 16, 2010 and has been incarcerated ever since. He is currently scheduled to be sentenced on September 28, 2018.

1

On November 15, 2017, the Court issued an order (the "Order") denying a motion by the Defendant, pursuant to Federal Rule of Criminal Procedure ("FED. R. CRIM. P." or "Rule") 33, for a new trial. The Defendant's motion argued that the government committed a *Brady* violation, that the Defendant discovered new evidence, that Williams's counsel was ineffective, and that the government secured a conviction through false testimony. In the Order, the Court ruled that the Defendant's motion was untimely and, that even if it was timely filed, the Defendant's arguments failed on the merits.

Since the Order was issued by this Court, the United States Supreme Court decided *Carpenter v. United States*, —U.S.—, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018), which held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell service location information]" which requires that law enforcement officers typically obtain a warrant before obtaining such information.

In his request for reconsideration, the Defendant contends that his trial counsel was ineffective because she failed to move to suppress cell site location evidence obtained without a warrant.

Presently before the Court is a motion by the Defendant, pursuant to FED. R. CRIM. P. 33 to reconsider the Court's Order based on claimed ineffective assistance of counsel at trial for failing to move to suppress cell-site location evidence obtained without a warrant. For the following reasons, the Defendant's motion is denied in its entirety.

## I. BACKGROUND

For the purposes of this motion, familiarity with the Order is presumed. The Court's discussion of the Order will be limited to the specific challenges presently raised by the Defendant. In this regard, references to the trial transcript are denoted as "Tr."

As stated in the Order, on December 8, 2011, after a three-week trial, the jury convicted the Defendant on 15 counts of criminal conduct. The Defendant's trial counsel, Randi Chavis, Esq., requested that the Court poll the jury. The Court obliged counsel's request and the polling revealed that the jury's verdict was unanimous on all counts. Tr. 1870-1919 ("Let the record indicate that the oral polling exactly coincides with the written verdict sheet, and the foreman's oral recitation of the verdict."). After the Court recessed the jury, Ms. Chavis requested the right to reserve ten days to submit post-trial motions to the Court. The Court granted Ms. Chavis's request. Tr. 1919.

Sentencing was originally scheduled for March 23, 2012. Since then, the Court has granted more than twenty motions to adjourn the Defendant's sentencing. At this juncture, sentencing has been delayed more than six years from its original scheduled date.

On September 18, 2014, Gary Schoer, Esq was appointed under the Criminal Justice Act as the Defendant's counsel to replace Ms. Chavis.

Since October 3, 2014, Mr. Schoer continued to ask, and this Court continued to grant, sentencing adjournments to investigate issues he planned to raise "as part of his sentence proceeding" or "in light of a motion [he] expect[ed] to file." *See, e.g.*, *See* Docket Entry ("DE") 383, 443-44, 462. The Court granted all of these requests.

## II. DISCUSSION

Rule 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Although the Court "has broad[] discretion to grant a new trial under Rule 33[,]" it "nonetheless must exercise [its] Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409,

1414 (2d Cir. 1992)); *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134. "In other words, there must be a real concern that an innocent person may have been convicted" for the Court to grant such a motion. *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (internal quotations and citations omitted). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (internal citations omitted).

## A. Reconsideration of a Motion for a New Trial

The Defendant requests that this Court reconsider its Order denying his motion for a new trial pursuant to Rule 33 based on *Carpenter*. However, there are no applicable provisions in the Federal Rules of Criminal Procedure that address reconsideration of a post-judgment motion that was previously denied. *See* FED. R. CRIM. P. 33-35; *United States v. Clark*, 984 F.2d 31, 33 (2d Cir. 1993) ("[T]he post-judgment motions authorized by the Criminal Rules do not contemplate a motion to reconsider a denial of a post-judgment motion." (citing FED. R. CRIM. P. 33-35)). Accordingly, this request for reconsideration is denied in its entirety.

## B. Timing

Regardless of the procedural mechanism the Defendant used, the instant motion is untimely. A motion for a new trial under Rule 33 on the basis of newly discovered evidence must be filed within three years of "the verdict or finding of guilty," FED. R. CRIM. P. 33(b)(1), while a Rule 33 motion based on any other ground must be filed within 14 days of "the verdict or finding of guilty." *See* FED. R. CRIM. P. 33(b)(2).

As a preliminary manner, regardless of whether the motion is grounded in "newly discovered evidence," the motion was filed far after the prescribed limit. The verdict was read on

4

December 8, 2011, which, under Rule 33, prescribes a time limit of December 8, 2014 if the motion is grounded in "newly discovered evidence," and December 22, 2011 under any other ground. The instant motion was filed on December 9, 2016, and the Defendant's motion for reconsideration was filed on September 5, 2018. Both were filed years after the prescribed time limit.

However, the Rule 33 time limits are not jurisdictional, and must be read in conjunction with Rule 45. *See Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005) (per curiam) (concluding that Rule 33 motions are non-jurisdictional). Rule 45(b) states, in pertinent part: "When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made … after the time expires if the party failed to act because of excusable neglect." FED. R. CRIM. P. 45(b). For the reasons described in the Order, the Defendant failed to demonstrate excusable neglect for filing the instant motion years later than the time limit provided by the Rules. The Court, therefore, finds it untimely.

## C. The Merits

Even if the Defendant had filed the motion in a timely fashion, he is far from satisfying the "heavy burden" imposed on a Defendant who is "challenging the sufficiency of evidence supporting a conviction." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (internal citations omitted).

The Court finds that Williams's ineffective assistance of counsel claim fails as a matter of law. The Second Circuit has noted that a Motion for a New Trial is an inappropriate vessel to address ineffective assistance of counsel. *See United States v. Cammacho*, 462 F. App'x 81, 83 (2d Cir. 2012). Regardless, in order to succeed, the Defendant must satisfy the standard articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 686-88, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984). To do so, his trial counsel must have performed her duties below "an objective standard of reasonableness." *Id*. at 688. Further, "the defendant [must] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 669. In other words, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Second Circuit has cautioned district courts that "[t]he court's central concern is not with grading counsel's performance, but with discerning whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *United States v. Aguirre*, 912 F.2d 555, 561 (2d Cir. 1990) (internal citations and quotation marks omitted).

The Defendant's sole contention in his motion is his trial attorney's failure to adequately challenge the government's use of cell site location evidence during the trial. According to the government,

> On or about November 9, 2009, AUSA John Durham applied for authorization pursuant to 18 U.S.C. 2703(d) to obtain cell tower data from the closest cell tower to the Wyandanch Post Office. Authorization was granted. 09-MC-724 (ARL). The information provided by the major carriers in response to the Order included a spreadsheet of phone numbers that "hit" off that cell tower in the early morning hours of October 30, 2009.

> From the cell tower data provided, grand jury subpoenas were issued for the toll records of the approximately ten cell phone numbers that "hit" off that tower near the time of the robbery.

> Seven additional robberies were committed by Williams and his coconspirators between November 2009 and March 2010.

> Between January 2011 and October 2011, AUSA Lara T. Gatz applied to various Magistrate Judges pursuant to 18 U.S.C. 2703(d) for authorization to obtain historical cell site date of ten cellular telephones, including that of defendant WILLIAMS - (347) 695-7783. Authorization was granted. 11-MC-44 (ARL), 11-MC-103 (WDW), 11-MC-225 (ETB), 11-MC-243 (ETB), 11-MC-244 (ETB), 11-MC-702 (ETB) and 11-MC-703 (ETB).

DE 535 at 1-2.

*Carpenter* expanded the Fourth Amendment's privacy protections to include an individual's "legitimate expectation of privacy in the record of his physical movements as captured through [cell service location information]." 138 S. Ct. at 2217. To comply with *Carpenter*, the government and other law enforcement officers must generally now obtain a warrant supported by probable cause before procuring the requisite data. *Id*.

The applicable orders issued in the instant action were not supported by probable cause. Rather, they were based on "reasonable grounds to believe that the contents of [the information sought were] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). This is a more lenient standard than that required by *Carpenter*. The Defendant argues that the evidence obtained by what would have been an unlawful search should be barred by the exclusionary rule.

In general, the exclusionary rule is the Court's "last resort, not [its] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006). "To safeguard Fourth Amendment rights generally, the Supreme Court has crafted the exclusionary rule, requiring the exclusion of evidence when the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013) (internal citations and quotations omitted). As the rule seeks "to deter future Fourth Amendment violations," *Davis v. United States*, 564 U.S. 229, 236-37, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011), the Supreme Court advises district courts to only suppress evidence where it serves such a purpose. *Herring v. United States*, 555 U.S. 135, 141, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). However, if the government "acted with an objectively reasonable good-faith belief that their

conduct is lawful," than the exclusionary rule is inapposite.  *Davis*, 564 U.S. at 238 (internal

quotation marks omitted).

The good-faith exception covers searches that were conducted based on "reasonable

reliance on binding precedent."  *Id.* at 241; *accord United States v. Aguiar*, 737 F.3d 251, 259 (2d

Cir. 2013).  In *United States v. Zodhiates*, 901 F.3d 137 (2d Cir. 2018), the Second Circuit

addressed *Carpenter*'s impact on cell phone records obtained without a warrant in 2011 and the

appellant precedent at the time.  The panel concluded that the good-faith exception applied to cell

phone records subpoenaed rather than obtained with a warrant, because at that time, the third-party

doctrine allowed law enforcement officers to use subpoenas to obtain cell phone records.

*Zodhiates*, 901 F.3d at 143-44.  In pertinent part, Judge Parker explained:

> In *Miller*, the Supreme Court held that the government was entitled to obtain a
> defendant's bank records with a subpoena, rather than a warrant, because the bank
> records were "business records of the banks" and the defendant had "no legitimate
> expectation of privacy" in the contents of his checks because those documents
> "contain[ed] only information voluntarily conveyed to the banks and exposed to
> their employees in the ordinary course of business." Similarly, in *Smith*, the
> Supreme Court held that a defendant did not have a reasonable expectation of
> privacy in the telephone numbers that he dialed because "[t]elephone users ...
> typically know that they must convey numerical information to the phone company;
> that the phone company has facilities for recording this information; and that the
> phone company does in fact record this information for a variety of legitimate
> business purposes."
>
> These cases stand for the proposition that, in 2011, prior to *Carpenter*, a warrant
> was not required for the cell records. We acknowledged as much in *United States
> v. Ulbricht*, when we considered ourselves bound by the third party doctrine in
> Smith "unless it is overruled by the Supreme Court[.]"

*Id.* (internal citations omitted).

While the government sought information from third parties with a subpoena pursuant to

18 U.S.C. § 2703(c)(2) in *Zodhiates*, the government in the instant case used 18 U.S.C. § 2703(d),

a higher form of process than the 18 U.S.C. § 2703(c)(2) subpoena.  Both procedures were pursuant

to the Stored Communications Act ("SCA"). A presumption of good faith applies to reliance on the SCA or any other federal statute unless the statute is "clearly unconstitutional." *Illinois v. Krull*, 480 U.S. 340, 349, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987).

> Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.

*Id*. at 349-50.

In 2009-2011, at the time the government obtained authorization, the SCA was not "clearly unconstitutional." *United States v. Chambers*, —F. App'x—, No. 16-163-CR, 2018 WL 4523607, at *2 (2d Cir. Sept. 21, 2018) (finding that the SCA "was not 'clearly unconstitutional' in light of the third-party doctrine). As *Zodhiates* explains, prior to *Carpenter*, the third party doctrine did not mandate that the government obtain a warrant for cell phone records. *Zodhiates*, 901 F.3d at 144. This was not only true in the Second Circuit, but in all five appellate courts that considered it. *Id*. at 144 n.5 (listing the five circuits that "considered, before *Carpenter*, whether the warrant requirement in the Fourth Amendment applied to historical cell site information" and "concluded, in light of *Smith* and *Miller*, that it did not"). Further, Justice Roberts, in writing for the majority in *Carpenter*, recognized that cell site data "d[id] not fit neatly under existing precedents." *Carpenter*, 138 S. Ct. at 2214-16. The good faith exception applies to any potential Fourth Amendment violation committed by the government in obtaining these records without a search warrant.

Accordingly, the failure of Williams's trial counsel to attempt to suppress cell site information at trial did not fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Defendant's claims of ineffective assistance of counsel are without merit.

### III.  CONCLUSION

The Defendant's motion for reconsideration, pursuant to Rule 33 is denied in its entirety.

Sentencing remains scheduled for September 28, 2018.


It is **SO ORDERED**:

Dated:  Central Islip, New York

September 26, 2018

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge